IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JODY BLAKE and JAMES WILLIAM ELMORE, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | 4:09-cv-373 |
| METROPOLITAN LIFE INSURANCE COMPANY and JACKIE DOSS-ELMORE, Individually and as INDEPENDENT ADMINISTRATRIX OF THE ESTATE OF JAMES HUGH ELMORE, | § § § § § § § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Before the court are:

• Defendant Jackie Doss-Elmore's "Motion for Summary Judgment of Jackie Doss-Elmore, Individually and as Independent Administratrix of the Estate of James Hugh Elmore and Brief in Support Thereof" (Dkt. 27);

• "Plaintiff's Response to Defendant Jackie Doss-Elmore's Motion for Summary Judgment, and Brief in Support" (Dkt. 33);

• "Reply of Jackie Doss-Elmore, Individually and as Independent Administratrix of the Estate of James Hugh Elmore to Plaintiff's Response to Mrs. Elmore's Motion for Summary Judgment" (Dkt. 35);

• "Objections of Jackie-Doss Elmore, Individually and as Independent Administratrix of the Estate of James Hugh Elmore to Plaintiff's Summary Judgment Evidence" (Dkt. 36);

• "Defendant Metropolitan Life Insurance Company's Motion for Summary Judgment and Brief in Support" (Dkt. 37);

• "Plaintiffs' Response to Defendant Metropolitan Life Insurance Company's

1

> Motion for Summary Judgment, and Brief in Support" (Dkt. 39);

- "Defendant metropolitan Life Insurance Company's Reply Brief and Objections to Plaintiffs' Summary Judgment Evidence" (Dkt. 42);

- "Plaintiffs' Objection to Additional Evidence Attached to Defendant Metropolitan Life Insurance Company's Reply Brief" (Dkt. 47);

- "Plaintiff's Surreply to MetLife's Motion for Summary Judgment" (Dkt. 48);

- "Jackie Doss-Elmore's Brief in Support of the Motion for Summary Judgment of Metropolitan Life Insurance Company" (Dkt. 49);

- "Plaintiffs' Objections and Reply to Jackie Doss-Elmore's Brief in Support of the Motion for Summary Judgment of Metropolitan Life Insurance Company" (Dkt. 50); and

- "Defendant MetLife's Response to Plaintiffs' Objection to Additional Evidence Attached to MetLife's Reply Brief" (Dkt. 51).

Because Defendants' motions raise identical issues of law and fact, the court consolidated its review. For the reasons set out below, Defendants motions are granted.

## I. BACKGROUND

This is a suit involving ERISA plan benefits. Plaintiffs Jody Blake and James William Elmore filed suit in state court seeking a declaration that their deceased father James Hugh Elmore ("Decedent") was not married to Defendant Jackie Doss-Elmore ("Doss-Elmore") at the time of his death. According to Plaintiffs, they are entitled to Decedent's life insurance proceeds. However, MetLife has already paid out Decedent's insurance proceeds to Defendant Jackie Doss-Elmore. Defendants Jackie Doss-Elmore and Metropolitan Life Insurance Company ("MetLife") removed the suit to federal court on the grounds that Plaintiffs' state law claims are essentially a claim for ERISA plan benefits and are therefore preempted by ERISA.

James Elmore and Jackie Doss-Elmore were ceremonially married in November 2001.

2

After their marriage, the couple resided together at 1725 Scottsdale Drive, Plano, TX, 75023. On August 2, 2002, the couple divorced. Although Doss-Elmore and Decedent were never ceremonially remarried, they continued to reside together at 1725 Scottsdale Drive. According to Doss-Elmore, she and Decedent reconciled and agreed to live together as husband and wife. Plaintiffs dispute Doss-Elmore's characterization of her relationship with Decedent. According to Plaintiffs, Doss-Elmore and Decedent lived together as roommates in separate parts of the house. Plaintiffs contend that Doss-Elmore and Decedent never intended to be remarried or establish an informal marriage. Notwithstanding the dispute concerning the nature of their relationship, Decedent and Doss-Elmore were living together when Decedent died on September 5, 2008.

Decedent was an employee of ARAMARK Corporation ("ARAMARK") and a participant in the ARAMARK Corporation Life and Accident Plan (the "Plan"). Under the Plan, Decedent had $343,000 in life insurance coverage (the "Plan Benefits") under a life insurance policy issued by MetLife that became payable upon his death on September 5, 2008. At the time of his death, Decedent had not designated a beneficiary of the Plan Benefits. According to the terms of the Plan, if a beneficiary is not designated, MetLife must determine the appropriate beneficiary:

> If there is no Beneficiary designated or no surviving Beneficiary at Your death, We will determine the Beneficiary according to the following order:
>
> 1. Your Spouse, if alive;
> 2. Your child(ren); if there is no surviving Spouse;
> 3. Your parent(s), if there is no surviving child;
> 4. Your sibling(s), if there is no surviving parent; or
> 5. Your estate, if there is no surviving sibling.

(Dkt. 27, Ex. 1A at 54.)

On October 17, 2008, Doss-Elmore filed a claim for Plan Benefits as Decedent's spouse. To support her claim, Doss-Elmore supplied MetLife with evidence that she and Decedent had an informal marriage under Texas law. Plaintiffs, as Decedent's surviving children, also made individual claims for the Plan Benefits. On November 4, 2008 and November 11, 2008, respectively, Plaintiffs James Elmore and Jody Blake made individual claims for benefits as Decedent's surviving children. On May 26, 2009, MetLife denied Plaintiffs' claims and paid the Plan Benefits to Doss-Elmore. In its denial letter, MetLife explained that it considered evidence of Decedent's relationship with Doss-Elmore and concluded that the couple was informally married at the time of Decedent's death:

> [w]e have also received sufficient information stating that there was a Common Law Marriage established between James and Jackie after the settlement of the divorce. According to our [sic], James and Jackie agreed to reunite a few months after the divorce and were together up until his death. In documents on file with the Aramark Corporation Jackie is listed as his spouse. We are also in receipt of various legal documents that list Jackie as the spouse.

(Dkt. 27 Ex. 1 at Elmore/Metlife 160.) MetLife's denial letter also provided Elmore and Blake with information regarding the administrative appeals process.

Rather than await the outcome of their appeal with MetLife, Plaintiffs' filed the current action in state court seeking a declaration that Doss-Elmore was not Decedent's spouse by informal marriage at the time of his death. Although Plaintiffs admit the declaration they seek may have a bearing on MetLife's award of benefits, they contend their claim is not a claim for benefits that is preempted by ERISA. Defendants argue Plaintiffs' claim for declaratory judgment is essentially a claim for benefits preempted by ERISA. According to Defendants, summary judgment should be granted because MetLife's decision to award the Plan Benefits to Doss-Elmore was supported by substantial evidence.

4

## II. LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 323, 325; *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e)(2). The nonmovant must adduce affirmative evidence. *See Anderson*, 477 U.S. at 257.

## III. DISCUSSION

In their motions for summary judgment, Doss-Elmore and MetLife argue that this court should summarily deny Plaintiffs' claim for plan benefits because MetLife's decision is supported by substantial evidence. Plaintiffs make several arguments in opposition to Defendants' motions for summary judgment. First, Plaintiffs contend that ERISA does not apply because their declaratory judgment action is entirely a state law claim. If ERISA does apply, Plaintiffs argue that MetLife's decision should be reviewed *de novo*. According to Plaintiffs, the court should not review MetLife's determination according to the arbitrary and capricious standard because MetLife is not designated as a fiduciary under the plan, MetLife's decision was tainted by a conflict of interest, and MetLife's review of Plaintiffs' claims did not comply with ERISA's procedural requirement.

### A. PREEMPTION

"The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). There are two sections of ERISA that might operate to preempt a party's state law cause of action: § 514(a) and § 502(a). *See Woods v. Tex. Aggregates, L.L.C.*, 459 F.3d 600, 602 (5th Cir. 2006). Under § 514(a), ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a). To determine whether state law claims "relate to" an ERISA plan, district courts in the Fifth Circuit ask "(1) whether the state law claims address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) whether the claims directly affect the relationship among the traditional ERISA entities-the employer, the plan and its fiduciaries and the participants and

beneficiaries." *Woods*, 459 F.3d at 602. When § 514(a) is inapplicable, § 502 may operate as an independent ground for federal preemption. Under § 502, a plan participant or beneficiary may bring suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1). Where a state law claim merely "duplicates, supplements, or supplants the ERISA civil enforcement remedy," the state law claim is completely preempted and will be recharacterized as a federal law claim under § 502(a). *Davila*, 542 U.S. at 209.

Here, Plaintiffs' action is preempted because (1) it could have been brought under ERISA's civil enforcement provision, and (2) there is no other independent legal duty to support the claim. *See id.* at 210. Therefore, even though Plaintiffs "did not plead a federal cause of action on the face of the complaint, the claim is necessarily federal in character [because] it implicates ERISA's civil enforcement scheme." *Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525, 529 (5th Cir. 2009) (quotations omitted).[1]

---

[1] The court considered the following portions of Plaintiffs' state court complaint in determining that Plaintiffs' claims duplicate, supplement or supplant an ERISA remedy:

> 23. Although Defendant MetLife has received little to no evidence supporting Ms. Doss-Elmore's claim of a common law marriage, MetLife has nonetheless decided to deny Plaintiffs' claim to the insurance proceeds and to instead pay them to Ms. Doss-Elmore.
>
> 24. Pleading in the alternative, MetLife may have already paid the proceeds of the MetLife Policy into a MetLife Total Control Account in the name of Ms. Doss-Elmore, which account remains on deposit with and under the control of MetLife, but which is wholly accessible at any time by Ms. Doss-Elmore.
> ...
>
> 30. Pursuant to the terms of the MetLife Policy and to the terms of facility of payment guideline written within the Aramark Corporation Group Life Contract, Plaintiffs are entitled to receive the proceeds of the MetLife Policy.

(Pls.' Orig. Pet. at 5, 7.) These averments, taken in the context of the complaint as a whole indicate that

Although Plaintiffs argue in opposition to summary judgment that their claim is an entirely state law matter, independent from ERISA's review procedures, Plaintiffs have made no motion to remand in this case or presented any argument to explain why ERISA's preemption provisions do not apply to their claims. (*See* Dkt. 33 at 9, Dkt. 39 at 6.) Instead, to avoid preemption, Plaintiffs simply assert that the present action was filed solely to determine whether Doss-Elmore and Decedent were lawfully married. Plaintiffs argue their declaratory judgment action is not a claim for plan benefits and MetLife's decision concerning the award of plan benefits should be stayed pending the outcome of their state court declaratory judgment action. To support this proposition, Plaintiffs cite *Smith v. New Mexico Coal 401(k) Personal Savings Plan*, an unreported case from the Tenth Circuit, which Plaintiffs argue directs "that when faced with conflicting information about the existence of a common-law marriage, the only way for a plan administrator to ascertain the fact is to wait for the outcome of legal proceedings." (Dkt. 39 at 6.) In *Smith*, the plaintiff sued New Mexico Coal 401(k) Personal Savings Plan and USA Retirement Savings Plan for benefits she claimed were wrongly paid to her husband's children instead of her as his surviving spouse. *Smith v. New Mexico Coal 401(k) Personal Saving Plan*, 334 Fed. Appx. 150, 151 (10th Cir. 2009) (unpublished). The Tenth Circuit held the plan administrator's decision was arbitrary and capricious because the administrator did not follow the plan's own procedure for deciding claims, which required that the plan administrator investigate conflicting information concerning the plan participant's marital status. *Id.* at 158–59.

Although both *Smith* and the present case involve determinations of common law

---

Plaintiffs action is in reality a claim for ERISA benefits.

marriage, Plaintiffs' reliance on *Smith* is misplaced.  First, the court's decision in *Smith* hinged on the fact that the plan administrator declined to follow the plan's own procedures in rendering her decision.  In the present case, there is nothing before the court to suggest that MetLife violated the terms of the Plan by making a determination as to Decedent's marital status.  Moreover, even if the reasoning in *Smith* could be applied to the present case, the only reason the court found the administrator erred was that the legal proceeding to establish the existence of a common law marriage was already underway when the administrator denied the putative spouse's claim.  Plaintiffs have not presented any evidence to show that MetLife was aware of any similar legal proceeding when it made its benefits determination in the present case.  Therefore, *Smith* is distinguishable.

### B. OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE

Before turning to the merits of Defendants' motions, the court will address the parties' objections to the summary judgment evidence before the court.  First, MetLife objects to Exhibits A and B attached to Plaintiffs' Response to Defendant Doss-Elmore's Motion for Summary Judgment.  Exhibits A and B are declarations from Jody Blake and James Elmore and photographs presented to contest the facts relied on by MetLife in its determination that Doss-Elmore and Decedent were partners in a common law marriage.  MetLife argues Plaintiffs' Exhibits A and B are "inadmissable and irrelevant because they are not contained in the administrative record."  (Dkt. 42 at 6.)

"An ERISA claimant is confined to the administrative record when appealing her denial of benefits to the courts."  *Cooper v. Hewlett-Packard Co.*, 592 F.3d 645, 657–58 (5th Cir. 2009); *see also Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 299 (5th Cir. 1999) ("A long

9

line of Fifth Circuit cases stands for the proposition that, when assessing factual questions, the district court is constrained to the evidence before the plan administrator."). In the Fifth Circuit, "the administrative record consists of relevant information made available to the administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it." *Vega*, 188 F.3d at 300. Therefore, a district court cannot "admit new evidence for the purpose of resolving [a] dispute on the merits of [a] claim." *Id.*

In the present case, the information presented in Exhibits A and B was not made available to MetLife prior to Plaintiffs' lawsuit. Although Plaintiffs could have submitted the evidence contained in Exhibits A and B as a part of their administrative appeal before filing the present lawsuit, they did not do so. Instead, Plaintiffs apparently "dismissed the administrative process as a nuisance and placed all their eggs in the litigation basket." *Id.* at 298–99. Because Exhibits A and B were not presented at the administrative level, this court cannot now consider them. As the Fifth Circuit explained in *Vega*,

> [o]ur motivating concern here is that our procedural rules encourage the parties to resolve their dispute at the administrator's level. If the claimant believes that the district court is a better forum to present his evidence and we permit the claimant to do so, the administrator's review of the claims will be circumvented.

*Id.* at 300. Therefore, MetLife's objection to Plaintiffs' Exhibits A and B is sustained.

In addition, Plaintiffs object to the Governance Document and Group Policy attached to MetLife's Reply (Dkt. 42) and the evidence attached to Doss-Elmore's brief in support of MetLife's motion for summary judgment (Dkt. 49). Because the court did not rely on this evidence in reaching its decision, it need not rule on Plaintiffs' motion to strike.

### C. STANDARD OF REVIEW

A district court reviewing the denial of benefits under ERISA is to apply "a *de novo*

standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). When the plan vests discretionary authority in the administrator or fiduciary, the administrator's construction is reviewed for abuse of discretion and will not be overturned unless it is arbitrary and capricious. *See id.* at 111–15. In the Fifth Circuit, the *Bruch* standard is applied "only to questions of law; thus, with or without a discretion clause, a district court rejects an administrator's factual determinations in the course of a benefits review only upon the showing of an abuse of discretion." *Dutka v. AIG Life Ins. Co.*, 573 F.3d 210, 212 (5th Cir. 2009). "Consequently district courts in the Fifth Circuit review under an abuse of discretion standard a plan administrator's factual determinations and determinations made pursuant to a plan that gives the administrator discretionary authority to determine eligibility or interpret the terms of the plan." *Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 598 (5th Cir. 1994); *see also Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 226 (5th Cir. 2004) ("a plan administrator's factual determinations are always reviewed for abuse of discretion").

"A plan administrator abuses its discretion where the decision is not based on evidence, even if disputable, that clearly supports the basis for its denial." *Holland v. Int'l Paper Co. Retirement Plan*, 576 F.3d 240, 246 (5th Cir. 2009) (quotation omitted). In other words, a decision is only an abuse of discretion if it is made arbitrarily or capriciously or if it is "made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Id.* (quotation omitted). Accordingly, under the abuse of discretion standard, this court's review of an administrator's decision "need not be particularly complex or

11

technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness-even if on the low end." *Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 398 (5th Cir. 2007) (quotation omitted).

In Texas, the existence of a common law marriage is a question of fact. *Joplin v. Borusheski*, 244 S.W.3d 607, 611 (Tex. App.—Dallas 2008, no pet.) ("The existence of a common law marriage is a question of fact to be resolved by the fact finder."); *Jenkins v. Jenkins*, 16 S.W.3d 473, 480 (Tex. App.—El Paso 2000, no pet.) (same); *White v. State Farm Mut. Ins. Co.*, 907 F. Supp. 1012, 1016 (E.D. Tex. 1995) (same). Therefore, the proper standard of review for MetLife's determination of common law marriage is abuse of discretion. *See Vercher* 379 F.3d at 226.

To avoid discretionary review, Plaintiffs go to great lengths to prove that the plan documents do not designate MetLife as a plan fiduciary. According to Plaintiffs, MetLife cannot be characterized as a plan fiduciary because the summary plan description does not specifically designate MetLife as either the plan fiduciary or the plan administrator. However, in the present case, MetLife's determination that Doss-Elmore and Decedent were married was a factual determination. *See Joplin,* 244 S.W.3d at 611. Therefore, regardless of MetLife's role as plan fiduciary, this court reviews MetLife's factual determination for abuse of discretion. *See Dutka*, 573 F.3d at 212.

Plaintiffs also argue that even if MetLife can be characterized as a fiduciary, MetLife's decision is not entitled to deferential review because its decisionmaking was tainted by a conflict of interest. A conflict of interest occurs where, as here, the same entity bears the responsibility for determining eligibility and for paying benefits. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105,

128 S. Ct. 2343, 2349 (2008). The existence of a conflict of interest does not change the standard of review, but the conflict is weighed as a factor in deciding if the administrator has abused its discretion. *Id.* at 2350. Therefore, the court must consider this conflict as a factor in its review of MetLife's decision to deny benefits.

Plaintiffs admit that MetLife's inherent conflict, as the entity determining eligibility and paying benefits, is small because the decision was simply a matter of to whom the money should be paid. (*See* Dkt. 39 at 17 ("MetLife's conflict may have been minor at the outset based solely on the fact that it was considering whether or not to pay out its own money.").) However, Plaintiffs also argue that because MetLife has already paid Doss-Elmore's claim, the conflict is now "enormous." (Dkt. 39 at 17.) This argument ignores the fact that MetLife had not paid the benefits when it made the decision now under review. Therefore the court declines to find the conflict of interest to be "enormous," as Plaintiffs suggest.

Finally, Plaintiffs claim MetLife's determination of benefits is not due any deference because MetLife did not fully consider their claim at the administrative level. (*See* Dkt. 39 at 18.) Specifically, Plaintiffs allege MetLife never responded to James Elmore's claim and has yet to make a determination on Jody Blake's appeal. But, the record before the court indicates that Plaintiffs filed the present lawsuit without awaiting the conclusion of the administrative proceedings. Plaintiffs cannot at once claim that the administrative process should be bypassed and argue that incomplete administrative proceedings entitle them to heightened review. Therefore, MetLife's determination is not subject to *de novo* review.

### D. METLIFE'S DECISION TO AWARD BENEFITS TO DOSS-ELMORE

MetLife's decision to award the Plan Benefits to Doss-Elmore is supported by substantial

evidence in the administrative record. In its denial letter, MetLife explains its decision as follows:

> We have received claimant affidavits that list the potential heirs from, Jackie Poss [sic] Elmore and James William Elmore. According to the affidavit submitted by James, the employee and Jackie were divorced in August of 2002. We have also received a divorce decree show [sic] that that [sic] the divorce was final.
>
> However, we have also received sufficient information stating that there was a Common Law Marriage established between James and Jackie after the settlement of the divorce. According to our [sic], James and Jackie agreed to reunite a few months after the divorce and were together up until his death. In documents on file with the Aramark Corporation Jackie is listed as his spouse. We are also in receipt of various legal documents that list Jackie as the spouse.
>
> Although there was not a second formal ceremony performed, James and Jackie are considered married by common law. Since the state of Texas and the Aramark Corporation both recognize common law marriage we must respectfully deny your clients [sic] claim.

(Dkt. 27 Ex 1 at Elmore/MetLife 160.) Therefore, MetLife determined Doss-Elmore and Decedent entered into a common law marriage based on evidence that the couple reunited after their divorce, Aramark documents that listed Doss-Elmore as Decedent's spouse, and other legal documents that list Doss-Elmore as the spouse.

In Texas, an informal marriage may be established by showing the parties: (1) agreed to be married; (2) lived together in Texas as husband and wife; and (3) represented to others that they were married. TEX. FAM. CODE § 2.401(a)(2) (Vernon 2006). The administrative record in the present case supports MetLife's conclusion that there was an informal marriage between Doss-Elmore and Decedent. First, in a UBS form dated December 15, 2007, Decedent lists himself as married. (Dkt. 27 Ex. 1 at Elmore/MetLife 78.) A "Disclosure of Medical/Financial Information to Friends or Family" form dated August 12, 2008, also lists Doss-Elmore as Decedent's spouse and grants her access to both medical and financial information. (*Id.* at

14

Elmore/Metlife 80.) On August 13, 2008, Decedent signed an "Advance Directive Tracking Form" that also lists Doss-Elmore as his spouse and designates her as the person to make decisions about his medical treatment. (*Id.* at Elmore/MetLife 87.) Similarly, documents related to Decedent's home loan, signed in 2008, indicate Doss-Elmore and Decedent owned their home in a joint tenancy and a homestead and marital status affidavit indicate that Doss-Elmore and Decedent agreed to be re-married in November 2002. (*See id.* at Elmore/Metlife 88–90, Elmore/Metlife 91.) In addition, the administrative record contains affidavits from several social acquaintances of Doss-Elmore and Decedent. Each affidavit describes the couple as married. (*Id.* at Elmore/MetLife 106–111.) These documents establish that MetLife's determination of a common law marriage between Doss-Elmore and Decedent was supported by substantial evidence in the administrative record.

## IV.  CONCLUSION

Because Plaintiffs' summary judgment evidence does not create a fact issue that Defendant MetLife abused its discretion in determining Decedent and Defendant Doss-Elmore agreed to be informally married, Defendants motions for summary judgment (Dkt. 27 & 37) are **GRANTED**.

**IT IS SO ORDERED.**

**SIGNED this the 2nd day of July, 2010.**

_____
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE